SCHOCK v. OLSEN & TILGNER MFG. CO. et al.

(Circuit Court, N. D. Illinois, E. D. February 2, 1906.)

No. 26,488.

PATENTS—INFRINGEMENT—BARREL WASHERS.

The Klamt patent, No. 400,346, and the Schock patent. No. 605,138, each for a barrel-washing apparatus, construed, and, as limited by the prior art, *held* not infringed.

In Equity. On final hearing.

Briesen & Knauth, for complainant.

Banning & Banning, for defendants.

KOHLSAAT, Circuit Judge. The complainant filed his application in the patent office May 14, 1897, for a barrel washer. Some of the claims therein stated were rejected on the patent issued to Klamt March 26, 1889, No. 400,346, for a barrel-washing machine. Thereupon complainant purchased the Klamt patent, and now asserts that it contains certain basic claims broader in scope than those of his own patent. For this reason he now brings suit upon claims 1, 2, and 3 of the last-named patent, and claims 1–5, 7, and 8 of the Schock patent, which read as follows:

Klamt patent, No. 400,346:

"(1) The improved automatic barrel-washing machine herein described, combining a tank adapted for filling barrels with water, top and end brushes operated by levers for washing and scrubbing said barrels, a tank adapted for cleansing and rinsing the barrels after being washed and scrubbed, rollers to cause the barrel to revolve, and an arm for automatically transferring the barrel to the rinsing tank, as and for the purposes set forth.

"(2) An automatic barrel washer, combining a plurality of washing tanks, a carrier for conveying or transferring the keg or barrel from one tank to the next, and a scrubber or washer for removing the adhering dirt in the transfer, as set forth.

"(3) In a barrel-washing machine, a water tank, a revolving shaft provided with arms for receiving, holding, and automatically discharging the barrel from the tank. pawl and ratchet wheel for regulating the motion of the shaft, crank. levers, and rods connecting said shaft with the main driving shaft of the machine, substantially as described and for the purposes set forth."

Schock patent, No. 605,138:

"(1) In a barrel-washing apparatus, the combination of a barrel feed tank, an inclined run in said tank adapted to support a plurality of barrels, and to enable them to move thereon in one direction, and revolving hooks and means for revolving them in the opposite direction, so that they will mechanically pick the first of said barrels off of the inclined run in the feed tank, substantially as described.

"(2) In an apparatus for soaking, scrubbing, and washing barrels at one continuous operation, the combination of a scrubbing device, a feed tank, mechanism for transferring the barrels from the feed tank to the scrubber, and gravity runs within the feed tank for automatically feeding barrels in one direction to the transferring mechanism moving in the opposite direction.

"(3) In a barrel-washing apparatus. the combination of a barrel feed tank, gravity runs therein in pivotal connection with the tank, and means for adjusting the said runs so as to give the keg the desired quantity of water, so that large and small packages can be supplied with water to the desired extent, substantially as described.

"(4) In a barrel-washing apparatus, the combination of a barrel feed tank, movable gravity runs therein, means for raising and lowering one end of the runs whereby to supply the barrels on the runs with the desired quantity of water, and means for lifting the barrels off of said runs.

"(5) In a barrel-washing apparatus, the combination of a barrel feed tank, gravity runs therein, arms for picking up barrels from the gravity runs and delivering the same from the tank, and gear for operating the arms in a direction opposite to the motion of the barrels on the gravity runs. * * *

"(7) In an apparatus for soaking, scrubbing, and washing barrels by one continuous operation, the combination of the barrel feed tank, inclined runs therein, means for adjusting the runs to various inclinations, means for lifting the barrels from the barrel feed tank, and a barrel scrubber to which the barrels are delivered by the lifting mechanism, the barrel in the scrubber being automatically discharged and replaced by the next succeeding barrel delivered from the lifting means.

"(8) In an apparatus for soaking, scrubbing, and washing barrels by one continuous operation, the combination of a barrel feed tank adapted to contain a plurality of barrels, inclined gravity runs within said tank, along which runs the barrels are free to move from end to end, a barrel scrubber, revolving hooks moving in a direction opposite to that of the feed of the barrels, said hooks being adapted to lift the first barrel of the series off the runs, and deliver it from above to the scrubber; the barrel in the scrubber being automatically replaced by the next succeeding barrel delivered from the revolving hooks."

Claims 1 and 2 of the Klamt patent are for a two tank barrel-washing machine, with scrubbing mechanism located between the two tanks. The barrels to be cleaned are first plunged into a long tank of hot water, where they are submerged and soaked inside and out for the purpose of dissolving the unclean substances. They are then moved slowly along curved guideways, rolling and taking water as they go, to the opposite end of the tank onto rollers, where they are rotated rapidly against end and side brushes, which scour off the loosened matter. At the same time the water inside is violently agitated by the rolling process. The bung and spiggot holes being open, the water gradually escapes, carrying the dirt with it. The barrels are then carried to the cold water tank and rinsed. Claim 3 calls for one of the tanks, but does not say which one, and sets out the specific receiving, discharging, and operating devices, not particularly involved on this hearing. From the time the barrels are placed in the tank until they are delivered upon the rollers, they are forced along by rotating arms.

The claims of the Schock patent in suit call for a long tank having an inclined run, two skids higher at the receiving end than at the discharging end, means for raising or lowering the discharge end thereof, so that it may be adapted to different sized barrels, revolving hooks arranged to pick up the barrel from the lower end of the skids and deliver it to the scrubber, thence to be removed by impact with the succeeding barrel. The scrubber and its operation are substantially those of the prior art. The difference between the two consists mainly in the inclined runway or skids, whereby the barrel is automatically moved to the lifting arm at the discharge end of the tank, and the absence of the second tank. The arrangement is simple, and, according to the record, very satisfactory. If it is to be treated as a valid combination, as appears to be conceded, I see no reason in the present suit for joining the Klamt patent.

Complainant, Schock, in applying for his own patent, insisted that the latter patent did not cover an operative device. This point is not insisted on in the briefs, and need not be further considered. Defendants' device is shown in a blue print, marked "Complainant's Exhibit 5." It undoubtedly contains many of the elements of the Schock patent.

For the defendants, it is insisted that both in the prior art and in prior public use that patent is anticipated. Every element in the combination is old. The hot water tank, the rotating rollers, and the adjacent brushing device are in the combination shown in the Gottfried patent, No. 450,149, issued April 14, 1891, as were complainant's lifting hooks or arms. With regard to the means for adjusting the discharge end of the skids in order to vary the depth of water, the patent office held that it required no invention to make anything adjustable, and the claims covering that matter were rejected, as appears from the file wrapper and contents of the Schock patent. To the same effect was the holding of the patent office as to the inclined or gravity runs. These appear in patent No. 489,066, granted Anderson, January 3, 1893, for a barrel washer. This latter patent, however, does not make the forward movement of the barrels in the tank depend alone upon gravity, but assists such advance by positive mechanical propulsion, which serves also to lift the barrel from the tank onto the approach to the scouring device. In view of the above, it is evident that, unless complainant's patent contains patentable novelty, in that it provides in combination with the other devices of the prior art for (1) inclined skids creating a gravity run, and (2) a stop and other mechanism for feeding the barrels to the scrubber. it becomes so narrowed that defendants do not infringe. Upon these points defendants invoke prior public use.

According to a number of witnesses, defendants Olsen and Tilgner in 1892 placed several Anderson barrel washing machines in position for the Blatz brewery. These witnesses further show that in 1894 one of these tanks was stripped of its mechanical propelling mechanism, and fitted with inclined skids, i. e., gravity runs, and that lifting arms were substituted for the lifting device of the Anderson patent. There is some confusion between the witnesses as to the incline of the skids or track. Some of the witnesses swear that it was present, others did not notice particularly, while some assert that the barrels were advanced by force exerted by a man in charge; that they did not move freely toward the lifting arms at the discharge end of the tank. On the whole, it seems to be fairly established that there was some incline to the skids, though not enough to cause the barrels to resist the action of the water and move freely toward the discharge. Undoubtedly, it is of advantage that the decline should be sufficient to cause the barrels to gravitate to the lifting arm. Much of the record and briefs is taken up with this tank. It had, as an Anderson tank, a descending track or runway for the barrels. This was removed, and rails or skids were constructed in lieu thereof. so that the gravity run was before those working the change at the time. This tank was used in

this way for about six months regularly, and thereafter only on occasion when needed. When this tank was abandoned, the hooks and other parts of the mechanism were transferred to another tank, and so on up to the beginning of this suit. Defendants' tank resembles this modified Anderson tank quite as closely as it does that of Schock. There also appear in evidence certain other barrel-washing tanks used respectively at the Cream City Brewery and the West Side Brewery, Chicago, Ill. The latter discloses a gravity run from the receiving end to the discharging arms, upon skids or tracks, as well as a stop. The model of this tank, marked "Defendants' Exhibit, West Side Brewery 1889, Barrel Soaking Tank," is identified by witnesses. Its details vary from those of the patent, but show all the principles required to make it operative, as to make its work of cleansing barrels a continuous operation. The Cream City Brewery tank is similar to the Blatz machine, but has a horizontal track. Both of these tanks were in use before the Schock patent was applied for or invented. The fact that the tanks of the latter patent have gone into extended use is persuasive as to their merit. Whatever that is must be found outside the defendants' device. In view of the state of the art and the facts showing prior use, I am of the opinion that none of the claims in suit is infringed by defendant.

The bill is dismissed for want of equity.